FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAR -7  AM 9: 32

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

ERIC WAYNE DOTSON,                )
                                  )
            Petitioner,           )
                                  )
      v.                          )          CV 312-004
                                  )
UNITED STATES OF AMERICA and      )
BRIAN OWENS, Commissioner of the  )
Georgia Department of Corrections, )
                                  )
            Respondents.          )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Petitioner, an inmate currently incarcerated at Jenkins Correctional Facility in Millen, Georgia,[1] has commenced the above-captioned case pursuant to 28 U.S.C. § 2241 contesting the execution of his sentence of confinement. Respondents have filed their response to the petition.[2]

_____

[1] The Court is aware that a federal district court must have jurisdiction over the custodian of the petitioner in order to entertain a federal habeas corpus action. See Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004). While Petitioner was incarcerated at Dodge State Prison in Chester, Georgia, which is located within the Dublin Division of the Southern District of Georgia, when he filed this petition (see doc. no. 1, p. 1), he has since been transferred twice to other prison facilities in Georgia (see doc. nos. 5, 12). Petitioner is now incarcerated at Jenkins Correctional Facility in Millen, Georgia, which is located within the Statesboro Division of this District. As Respondents observe, however, because this Court properly acquired jurisdiction when the petition was filed, Petitioner's subsequent transfers do not defeat this Court's jurisdiction to address the petition. See Elcock v. Streiff, 554 F. Supp. 2d 1279 (S.D. Ala. 2008) (citing Padilla, 542 U.S. at 440); see also Tang v. Gonzales, No. 4:06cv00277-MP/WCS, 2006 WL 3628061, at *2 (N.D. Fla. Aug. 18, 2006) ("If a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

[2] While Petitioner is a prisoner in the custody of the State of Georgia, the claims in the instant petition concern the execution of his federal sentence, as explained in greater detail infra. Thus, the Court, in an Order dated January 25, 2012, added the United States of America as an additional respondent in this case. (Doc. no. 3, p. 1.) Thereafter, the United States filed a response. As noted by the Court in a prior Order, Respondent Owens stated that he would defer

(Doc. no. 8.) For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondents.

## I. BACKGROUND

Resolution of this case begins with recounting the somewhat tortuous procedural history of Petitioner's three convictions related to a series of robberies in three states in 1997 and 1998. After being arrested in Tennessee, Petitioner was transferred to Kentucky and charged with two robberies committed on July 21, 1997, and January 28, 1998. (Doc. no. 8, Attach. 1 (hereinafter "Farrar Decl."), ¶¶ 8-9; Attach. 2.) Petitioner, who briefly escaped custody before his conviction, received a life sentence for the robberies and an additional ten years for the escape on September 8, 1998. (Farrar Decl. ¶¶ 8-9; doc. no. 8, Attachs. 2-3.)

Shortly thereafter, on November 4, 1998, Petitioner was indicted by a federal grand jury in the Western District of Oklahoma for a robbery committed in Oklahoma on March 25, 1998. (Farrar Decl. ¶¶ 8, 10; doc. no. 8, Attachs. 4, 5.) Petitioner was transferred from the Kentucky Department of Corrections to the Western District of Oklahoma pursuant to a federal writ of habeas corpus *ad prosequendum* on March 31, 1999. (Farrar Decl. ¶ 10; doc. no. 8, Attachs. 4, 5.) On November 19, 1999, Petitioner was sentenced to a total of 322 months of imprisonment by the Western District of Oklahoma[3] with his term to be served after any sentence that he was

---

to the response by the United States concerning the claims in the instant petition. (See doc. no. 11, p. 2 (citing doc. no. 10-1, p. 2 n.1).)

[3]Petitioner was sentenced to 142 months for one count of robbery in violation of 18 U.S.C. § 1951, 60 months for one count of using a firearm during the commission of a crime of violence in violation of § 924(c)(1), and 120 months for knowingly transporting at least $5,000.00 worth of stolen goods in interstate commerce in violation of § 2314. (Doc. no. 8, Attach. 6.)

currently serving.[4] (Farrar Decl. ¶ 11; doc. no. 8, Attach. 6.) On January 4, 2000, the federal writ was released and petitioner was returned to the Kentucky Department of Corrections by the United States Marshal Service. (Farrar Decl. ¶ 13; doc. no. 8, Attach. 5.)

Thereafter, Petitioner was produced in the Superior Court of Cobb County, Georgia via a writ of habeas corpus *ad prosequendum* to face charges for a robbery committed in Georgia on February 26, 1998. (Farrar Decl. ¶¶ 8, 14; doc. no. 8, Attachs. 7, 8.) Petitioner was sentenced to a twenty-year term of imprisonment by the State of Georgia on June 16, 2000. (Farrar Decl. ¶14; doc. no. 8, Attachs. 7, 8.) On June 29, 2000, Petitioner was returned to the State of Kentucky. (Farrar Decl. ¶ 15; doc. no. 8, Attachs. 7, 8, 10.)

On April 27, 2001, the State of Kentucky reduced Petitioner's sentence to a thirty-year term of imprisonment, to run consecutive to any other sentence. (Farrar Decl. ¶ 16; doc. no. 8, Attach. 9.) Petitioner was then paroled from his Kentucky sentence on September 2, 2004, and turned over to the State of Georgia pursuant to a previously lodged detainer.[5] (Farrar Decl. ¶ 17; doc. no. 8, Attach. 10.) While Petitioner was serving his sentence in Georgia, the United States Marshal for the Middle District of Georgia lodged a federal detainer with the Georgia Department of Corrections on September 11, 2009, which the Georgia Department of Corrections acknowledged on September 14, 2009. (Farrar Decl. ¶¶ 18-19; doc. no. 8, Attachs. 11, 12.)

---

[4]Petitioner was sentenced by the Honorable Wayne E. Alley, United States District Judge. (See doc. no. 8, Attach. 6.) Judge Alley ordered that "[a]ll terms of imprisonment [are] to be served after any other sentence that [Petitioner] is currently serving." (Id.)

[5]The "Notice of Discharge" issued by the State of Kentucky does not indicate the date the detainer was filed by the State of Georgia, only that Petitioner was being released to the Georgia Department of Corrections. (See doc. no. 8, Attach. 10.) As explained in greater detail infra, however, the date the detainer was lodged is of no consequence. See Part II. A.

In September of 2011, Petitioner requested that the Bureau of Prisons designate the Georgia Department of Corrections for the service of his federal sentence, and that his federal and Georgia sentences run concurrently. (Farrar Decl. ¶ 20; doc. no. 8, Attach. 13.) The BOP followed the procedure outlined in the BOP Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence, in considering Petitioner's request. (Farrar Decl. ¶ 21; doc. no. 8, Attach. 14.) This included contacting the federal sentencing court, and the Honorable Vicki Miles-LaGrange, Chief United States District Judge, stated in response the court would defer to the BOP's decision on the request.[6] (Farrar Decl. ¶ 22; doc. no. 8, Attach. 15, 16.) On November 30, 2011, the BOP determined that Petitioner was not entitled to a *nunc pro tunc* designation to the State of Georgia, and Petitioner was provided written notification of that determination on December 7, 2011. (Farrar Decl. ¶¶ 23-24; doc. no. 8, Attachs. 17, 18.)

In the instant § 2241 petition, Petitioner makes three contentions: (1) that his transfer to the State of Georgia, rather than to federal custody, after his parole from the State of Kentucky was improper, (2) that his federal and Georgia sentences are to be served concurrently, and (3) that he should be given credit on his federal sentence for time spent "erroneously" in the custody of the States of Kentucky and Georgia.[7] (Doc. no. 1.) Respondents maintain that (1) Petitioner is properly in custody of the State of Georgia and (2) that Petitioner's federal and Georgia sentences are to run consecutively.[8] (Doc. no. 8.) The Court resolves the matter as follows.

---

[6]Chief Judge Miles-LaGrange stated that "[t]he Court [was] not at liberty to determine Judge Wayne E. Alley's intent in his sentencing order." (See doc. no. 8, Attach. 16.)

[7]Petitioner technically raises four grounds for relief. Ground Three, however, where Petitioner requests that the U.S. Attorney General "immediately obtain custody" of him, is implicit in his contention that his current custody in Georgia is improper. (Doc. no. 1, p. 3.)

[8]Respondents do not appear to directly address the claims concerning Petitioner's request for credit on his federal sentence, but have provided sufficient information for the Court to make

4

## II.    DISCUSSION

### A.    Petitioner is Properly in the Custody of the State of Georgia

The first issue to untangle with regard to whether Petitioner is properly in the custody of the State of Georgia is determining which sovereign properly had custody of him before he was released to Georgia. "The sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant." Weekes v. Fleming, 301 F.3d 1175, 1180 (10th Cir. 2002). Thus, as Respondent observes, Kentucky, which was the first sovereign to detain Petitioner, acquired custody first, and retained that custody until it paroled Petitioner.

Of course, Kentucky briefly relinquished custody of Petitioner to the United States and to Georgia pursuant to writs of habeas corpus *ad prosequendum*. "A writ of habeas corpus ad prosequendum," however, "is only a 'loan' of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction." Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir. 1980);[9] see also Butler v. Warden, FCC Coleman-Medium, 451 F. App'x 811, 812 (11th Cir. 2011) (*per curiam*) ("[W]hen the federal government takes possession of a state prisoner pursuant to a writ of habeas corpus *ad prosequendum*, the state's custody is not interrupted[.]"). Accordingly, the writ of habeas corpus *ad prosequendum* by which Petitioner was obtained from Kentucky to be federally prosecuted did not divest Kentucky of custody over Petitioner, nor did Kentucky's subsequent release of Petitioner into Georgia's custody for his prosecution there. Kentucky thus retained custody over Petitioner thereafter until he was paroled.

---

a recommendation. See infra Part II.C.

[9]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The remaining issue, then, is where Petitioner should have been released when he was paroled by the State of Kentucky. Who takes custody of a prisoner after his release is a matter of comity to be resolved by the sovereigns involved. See Causey, 621 F.2d at 694 ("[T]he federal government and a state are perfectly free to make any agreement between themselves concerning which of their sentences will be served first, as long as the prisoner is not compelled unnecessarily to serve his sentences in a piecemeal fashion."); see also Hernandez v. United States Atty. Gen., 689 F.2d 915, 919 (10th Cir. 1982) ("The law of comity is such that the two sovereigns may decide between themselves which shall have custody of a convicted prisoner[.]"). Notably, "When two autonomous jurisdictions are involved, as for example when a federal detainer is placed against an inmate of a state institution, a detainer is a matter of comity." Moody v. Daggett, 429 U.S. 78, 80 n.2 (1976).

Here, the State of Georgia lodged a detainer with the Kentucky Department of Corrections while Petitioner was serving his sentence there, and the United States did not do so.[10] Upon Petitioner's parole, Kentucky honored Georgia's detainer and released Petitioner to Georgia. The United States subsequently elected to lodge a detainer with the State of Georgia to obtain custody of Petitioner once he has completed his Georgia sentence.[11] All of these

---

[10]As Respondents note, Petitioner appears to contend that a federal detainer was lodged with the Kentucky Department of Corrections as well, before the one filed by the State of Georgia. Notably, Petitioner presents no evidence in support of this allegation. In any event, as honoring the detainer would be a matter of comity, the order in which the detainers were lodged would be irrelevant anyhow. See Moody, 429 U.S. at 80 n.2. Indeed, Petitioner has made this assertion before, to no avail. See United States v. Dotson, 430 F. App'x 679, 683 (10th Cir. 2011) ("We could locate no authority for [Petitioner's] proposition that the sequence in which detainers are filed dictates the order sentences are to be served.").

[11]Respondents also note that "[i]n the federal system, the 'power and discretion' to practice comity is vested in the Attorney General." United States v. Warren, 610 F.2d 680, 685 (9th Cir. 1980). Thus, according to Respondents, even if the federal sentencing court suggested that the federal sentence was to be served *immediately* after Petitioner was released from

elections were matters of comity to be decided by the sovereigns involved, and Petitioner simply

has no claim for relief based on his dissatisfaction with the decisions that were made. See

Brown v. United States Atty. Gen., 457 F.2d 938, 940 (5th Cir. 1972) ("This is a matter of

comity between the two sovereigns, federal and state, of which the prisoner cannot be heard to

complain."). Accordingly, Petitioner is entitled to no relief on his claim that he should be in

federal custody rather than that of the State of Georgia.

**B.      Petitioner's Federal and Georgia Sentences Are to Run Consecutively**

Petitioner also claims that his federal and Georgia sentences are to be served

concurrently, rather than consecutively. (Doc. no. 1, p. 3.) The rule applicable to the situation

is set forth at 28 U.S.C. § 3584, which states in pertinent part as follows:

> If multiple terms of imprisonment are imposed on a defendant at the same time,
> or if a term of imprisonment is imposed on a defendant who is already subject
> to an undischarged term of imprisonment, the terms may run concurrently or
> consecutively . . . . Multiple terms of imprisonment imposed at the same time
> run concurrently unless the court orders or the statute mandates that the terms
> are to run consecutively. *Multiple terms of imprisonment imposed at different*
> *times run consecutively unless the court orders that the terms are to run*
> *concurrently.*

28 U.S.C. § 3584(a) (emphasis added). Thus, where sentences are imposed at different times

and the sentencing judge does not specify whether the sentences are to be served concurrently

or consecutively, the statutory presumption provides that the sentences are to be served

consecutively. Id.; see also United States v. Ballard, 6 F.3d 1502, 1505-07 (11th Cir. 1993);

United States v. Hunter, No. 2:06-cr-81-FtM-29DNF, 2012 WL 4051954, at *2 (M.D. Fla. Sept.

---

Kentucky, it would have ultimately been a matter for the executive to decide, not the judiciary.
In any event, as Respondents also observe, the sentencing court made no suggestion about
whether the federal sentence should commence before or after any subsequently imposed
sentences, only that it should commence "after any other sentence that [Petitioner] is currently
serving." (Doc. no. 8, Attach. 6.)

13, 2012) ("[W]hen a federal sentencing court is silent on the matter, there is a statutory presumption that multiple sentences imposed at different times—even as between sentences imposed by state and federal courts—will run consecutively.") (internal quotation marks and citation omitted). Moreover, the Eleventh Circuit has held that a district court has the authority to impose a sentence to run consecutively to an "unrelated, unimposed state sentence on pending charges."[12] Ballard, 6 F.3d at 1507, 1510 (emphasis omitted); see also United States v. Andrews, 330 F.3d 1305, 1306-07 (11th Cir. 2003) (per curiam) (noting that a district court can impose a federal sentence to run consecutively to an "unimposed, future sentence.").

Here, Petitioner's Georgia and federal sentences were clearly imposed at different times, as the federal sentence was imposed in November of 1999 and the Georgia sentence in June of 2000. In addition, Judge Alley did not indicate whether the federal sentence should be served concurrently or consecutively with any unimposed state sentences, only providing that it was to be served "after any other sentence" that Petitioner was then currently serving. (Doc. no. 8, Attach. 6.) Accordingly, the statutory presumption of consecutive sentences applies, and Petitioner has presented nothing to compel a contrary conclusion.[13] On that basis alone,

---

[12]Of note, the Supreme Court recently decided that a federal district court had the authority to impose a federal sentence to run consecutive to an anticipated state sentence, in the context of a probation revocation proceeding based on the same underlying offense. See Setser v. United States, 132 S.Ct. 1463, 1473 (2012).

[13]As Respondents correctly observe, to the extent Petitioner is contending that the Superior Court of Cobb County ordered his Georgia sentence to be served concurrently with his federal sentence, such an order would have no binding effect on the federal government. See Finch v. Vaughn, 67 F.3d 909, 915 (11th Cir. 1995) ("[A] federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the federal sentence.") (citing United States v. Adair, 826 F.2d 1040, 1041 (11th Cir. 1987) (per curiam)).) In any event, based on the copy of the judgment and the excerpt from the transcript of his sentencing before the Superior Court of Cobb County, it does not appear that the Superior Court of Cobb County made any comment concerning Petitioner's federal sentence. (See doc. no. 1, pp. 25-27.)

Petitioner's argument that his state and federal sentences are to be served concurrently has no merit, and he is entitled to no relief on this claim.[14]

That would seemingly end the matter, except that Petitioner requested that the BOP make a *nunc pro tunc* designation to allow him to serve his federal sentence concurrently while he was serving his Georgia sentence. As noted earlier, that request was denied, and Petitioner does not explicitly challenge the BOP's finding in the instant petition. Still, given the nature of the relief sought by Petitioner, the Court presumes that he is making an implicit challenge to the BOP's denial of his request for a *nunc pro tunc* designation, and the Court will thus briefly review the BOP's decision.

Under BOP Program Statement 5160.05, the Regional Inmate Systems Administrator ("RISA") has the authority to designate a non-federal facility for concurrent service of a federal sentence and may make such a designation "when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." (Doc. no. 8, Attach. 14, PS 5160.05(7), (8), (9)).[15]

---

[14]Moreover, if Judge Alley had specified that the sentence was to be served consecutively, he would have been well within his discretion to do so. See Ballard, 6 F.3d at 1505-07; Andrews, 330 F.3d at 1306-07.

[15]The BOP asserts this authority based upon 18 U.S.C. § 3621(b), which states:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering - -
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence - -
        (A) concerning the purposes for which the sentence to

When the federal judgment provides no indication of the sentencing court's intent on this issue, the RISA has an obligation to look at the case and exercise discretion when deciding whether the state prison should be designated as a place of federal confinement *nunc pro tunc*.[16] Shanklin v. Haynes, CV 210-087, 2010 WL 4316753, at *2 (S.D. Ga. Sept. 28, 2010), *adopted by* 2010 WL 4316742 (S.D. Ga. Oct. 26, 2010); see also Reynolds v. Thomas, 603 F.3d 1144, 1150 (9th Cir. 2010); McCarthy v. Doe, 146 F.3d 118, 122-23 (2d Cir. 1998); United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998); Barden v. Keohane, 921 F.2d 476, 482 (3rd Cir. 1990).[17] The RISA must exercise his own independent judgment, considering the factors set forth at 18 U.S.C. § 3621(b) and the BOP's interpretation of this statute set forth in PS 5160.05.[18] Trowell v. Beeler, 135 F. App'x 590, 596 (4th Cir. 2005).

---

imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

The Court is aware that the BOP's reliance on § 3621(b) as a source for the authority to determine whether a federal sentence will be served concurrently or consecutively to a state sentence has been called into question by Setser. See 132 S.Ct. at 1470 (noting that the conferral of authority to the BOP to calculate sentences is not a conferral of authority "to choose between concurrent and consecutive sentences."). In any event, if Setser is to be read so broadly, that only closes the door more tightly on Petitioner, as it suggests that the BOP could afford him no relief, not that he would be entitled to serve his Georgia and federal sentences concurrently.

[16]Under PS 5160.05(9)(a), when the BOP designates a non-federal institution for service of a federal sentence, the result is that the federal sentence is served concurrently with the non-federal sentence.

[17]PS 5160.05 replaced 5160.04, which is referenced in several of the cases cited herein. "The two program statements are identical in all material respects," however. Reynolds, 603 F.3d at 1150 n.4.

[18]The factors to be considered under PS 5160.05(8)(a) include: "inmate discipline history, institutional adjustment, recommendations of the Wardens at the state and federal institutions, the recommendation of the prosecuting Assistant U.S. Attorney, intent of the federal sentencing court, if available, and any other pertinent information regarding the inmate."

10

Here, the RISA complied with his duty to determine whether Petitioner was entitled to a *nunc pro tunc* order and determined that such an order was not appropriate for Petitioner. (Doc. no. 8, Attachs. 15, 16, 17.) In response to Petitioner's request, the RISA noted in particular that the nature of Petitioner's current offense and his criminal history weighed against granting him a *nunc pro tunc* designation. (See id., Attach. 18.) Moreover, the RISA consulted with the sentencing court, which expressed no recommendation on the matter and stated it would defer to the BOP's determination. (Farrar Decl. ¶ 22; doc. no. 8, Attachs. 15, 16.) Finally, the RISA noted that for one of Petitioner's federal offenses—his 60-month sentence for use of a firearm during commission of a violent crime—it is specifically prohibited by statute that the sentence be served concurrently with any other term of imprisonment. See 18 U.S.C. §924(c)(1)(D)(ii); doc. no. 8, Attach. 17.

The decision regarding a request for a *nunc pro tunc* order is reviewed for abuse of discretion, and the reviewing court may only consider whether an applicant's request was properly considered by the BOP. See Barden, 921 F.2d at 478; see also Shanklin, 2010 WL 4316753, at *2 ("If the BOP fully and fairly considered the prisoner's claim under the procedures set out in Program Statement 5160.05 and the relevant statutes, its exercise of discretionary authority should be upheld."). Accordingly, as Petitioner has made no attempt to demonstrate otherwise, the Court finds that the BOP properly considered his request for a *nunc pro tunc* designation. In sum, Petitioner has failed to show that his Georgia and federal sentences should be served concurrently, and his request for relief on this ground also fails.

11

C.      **Petitioner's Claim for Credit on his Federal Sentence Lacks Merit or Is Unexhausted**

Petitioner also requests that he be given credit on his federal sentence for the time spent "erroneously" in custody in Kentucky and Georgia. (Doc. no. 1, p. 3.) Petitioner does not explain, however, why his time spent in custody was "erroneous." While Petitioner contends elsewhere that he should have been released into federal custody after he was paroled from Kentucky, which might colorably support an argument that his time spent in Georgia was "erroneous," there is simply no contention in the petition supporting his bare claim that the time he spent incarcerated in Kentucky was "erroneous."

In any event, to the extent this claim is premised on his assertion that his sentences should run concurrently, it fails for the reasons discussed supra, see Part II.B. Otherwise, any claim by Petitioner concerning how his federal sentence should be calculated would be properly made with the BOP in the first instance, not this Court. See, e.g., United States v. Lucas, 898 F.2d 1554, 1555 (11th Cir. 1990) (per curiam); see also Rodriguez v. Lamer, 60 F.3d 745, 747 (11th Cir. 1995) (noting requirement for exhausting administrative remedies with the BOP prior to seeking § 2241 relief in federal court). Moreover, according to Respondents, Petitioner's federal sentence has not been computed yet and will not be until he is placed into federal custody.[19] (Farrar Decl. ¶ 25.) Accordingly, Petitioner's request for credit toward his federal sentence is either baseless, or is premature and unexhausted.

---

[19] Under the applicable law, Petitioner's federal sentence does not commence until federal authorities take custody of him. See 18 U.S.C. § 3585(a); see also Dawson v. Scott, 50 F.3d 884, 888 n.6 (11th Cir. 1995) ("[A] federal sentence does not begin to run until the defendant is delivered to the place where the sentence is to be served.") (internal quotation marks and citation omitted); Butler, 451 F. App'x at 812 (11th Cir. 2011) (noting that a "prisoner's federal sentence does not begin to run until he is turned over to federal authorities after having served his state sentence.").

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondents.

SO REPORTED and RECOMMENDED this 7th day of March, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE